**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| TAMMIE TAULBEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     CAUSE NO. 3:19-CV-911-PPS-MGG |
| | ) |
| STARKE COUNTY INDIANA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Tammie Taulbee filed a meandering complaint concerning her termination as deputy assessor of Starke County. Although the complaint is robust, the facts contained in it are opaque. What precisely she did or refused to do that led to her termination is not entirely clear to me. In summary, as best I can tell, Taulbee refused to participate in two conveyances of real property that she thought were unethical, and her employment was terminated by her supervisor, Starke County Assessor Michelle Schouten, as a result. In her five count complaint, Taulbee has sued Starke County, County Assessor Schouten in both her individual and official capacities, and the three Starke County Commissioners (Charles Chesak, Kathy Norem, and Bryan Cavendar) who are also sued in both their individual and official capacities. All defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

### Background

Here are the facts as described in the complaint which I accept as true for present

purposes. Taulbee was employed by Starke County, Indiana, from March 2008 to March 2019. [Compl., DE 1, ¶ 9.] She worked as a deputy assessor at the Starke County Assessor's Office. [*Id.* ¶ 10.] Defendant, Michelle Schouten, served as the Starke County Assessor and was Taulbee's supervisor. [*Id.* ¶ 11.] (The Plaintiff refers to Ms. Schouten as "Michelle Snowden" her former name, but I will use her present name, Michelle Schouten).

Taulbee alleges that in December 2017, the Auditors office created an addendum to sales documents between two people named James E. Baily and Michael (Hank) Minix, related to real property owned by Bailey to unlawfully convey it to Minix without the required sales disclosure form which was supposed to be signed by both parties. [*Id.* ¶ 13.] Taulbee says this made the transaction "improper" but I'm not told why. I'm also not told what the consequences are to processing the real estate transaction without the required sales disclosure form. Who is harmed by the omission of the form? How are they harmed? In any event, when Taulbee discovered the "improper" conveyance, she complained to Assessor Schouten. [*Id.* ¶ 17.] Taulbee alleges that Schouten instructed her to complete the conveyance anyway, but she refused. [*Id.*] Taulbee was subsequently disciplined for refusing to complete the conveyance. [*Id.* ¶ 18.]

Pursuant to the County policy, Taulbee had a right to grieve her discipline. [Compl. Ex. C at 47-48; Ex. A at 11-12.] She did so by properly filing a complaint with the Starke County Commissioners which, pursuant to policy, they were to take up at

their next scheduled executive session. [Compl. ¶ 19.] The Commissioners did in fact take it up at their next meeting, and they upheld the disciplinary action taken against Taulbee by Assessor Schouten. [*Id.* ¶ 20.] In addition, the Commissioners chose to recuse Taulbee from having anything further to do with the particular real estate transaction that she found questionable. They instructed her that if someone came into the office seeking information about the questioned transaction, she should allow another employee to handle it. [*Id.*] The complaint further alleges that she was told "that she may be terminated if she continued to question the actions of any of Starke County's elected or appointed officials." [*Id.*]

Taulbee alleges that Defendants fired her "at the next soonest opportunity." [*Id.* ¶ 24.] Here's what happened. Taulbee was reviewing another conveyance, and she questioned paperwork provided to her by Jeff Houston (who happened to be Assessor Schouten's father). [*Id.*] The complaint does not allege on what date this occurred. What it does say is that Taulbee noticed that Houston failed to provide a sales disclosure form to the Assessor's Office. [*Id.* ¶ 25.] Taulbee must have brought this to the attention of Schouten because, according to the Complaint, Assessor Schouten asked Taulbee to complete the form for Houston. [*Id.* ¶ 26.] Why Schouten didn't ask her dad to fill out the form is unclear. But Taulbee viewed the act of her filling it out for him as "unlawful," and she refused to do it. [*Id.*]

Shortly after Taulbee's refusal to complete the sales disclosure form for Houston, she was terminated via letter effective March 8, 2019. [Compl. Ex. B.] The exact reason

for the termination is, again, entirely unclear.  [*Id.*]  Around March 14, 2019, Taulbee filed a written grievance in accordance with the Starke County's Employee Handbook. [Compl. Ex. C at 47-48; Ex. A at 11-12.]  The Starke County Commissioners convened an executive session concerning Taulbee's termination on March 29, 2019. At the hearing Taulbee complained about no action having been taken by Starke County to correct the unlawful conveyance, the fraud and conversion of real property to Hank Minix, the acts of Assessor Schouten instructing Taulbee to perform an unlawful act, and the infraction committed by Assessor Schouten regarding the sales disclosure form involving her father (Houston).  [Compl. ¶¶ 39-40.]  Taulbee says the hearing was a sham.  [*Id.* ¶¶ 37-40.]  First, Schouten wasn't even present at the hearing.  More troubling is the hearing was conducted by the County Attorney who was involved in Taulbee's termination in the first place; the County Attorney advised Schouten on the language to be used in sacking Taulbee.  [*Id.*]  Commissioners Norem, Chesak, and Cavendar upheld Taulbee's termination.  [*Id.* ¶ 41; Compl. Ex. D.]

There is one other line of allegations in the complaint to address before moving on to the analysis of this case.  Taulbee alleges that she campaigned against, and was associated with those campaigning against current Starke County Officials running for re-election to the same or different positions.  [Compl. ¶ 31.] Taulbee herself ran against Katherine Chaffins, the current Auditor, in the caucus run by the Starke County Democratic Party to fill the Treasurer's position.  [*Id.* ¶ 32.]  Taulbee ended up losing to Chaffins in a vote that took place on March 28, 2019, after she was terminated.  [*Id.*]

Assessor Schouten supported the incumbent officials.  [*Id.* ¶ 31.]

## Discussion

Taulbee's complaint contains five counts: (1) a section 1983 claim for violation of her First Amendment right to free speech, association, and support of political candidates of her choice; (2) a section 1983 claim for violation of her First Amendment right to free speech on matters of public concern; (3) retaliation/discrimination in violation of the Indiana False Claims and Whistle Blower Protection Act; (4) violation of her civil rights based on alleged violations of the Indiana Constitution; and (5) a section 1983 claim for violation of Taulbee's Fourteenth Amendment rights to equal protection and due process.

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements.  *See Iqbal*, 556 U.S. at 678.  Taulbee must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Before diving into the merits of each count of the complaint there is a threshold issue to address concerning whether the County Commissioners are proper defendants in this case. Defendants argue that all claims against the Commissioners Chesak, Norem, and Cavender should be dismissed because, under Indiana law, the Commissioners do not have the authority to terminate a Deputy Assessor, and they are therefore not proper parties. It is true that the applicable Indiana statute provides that "[t]he county assessor may appoint the number of full-time or part-time deputies and employees authorized by the county fiscal body," Ind. Code § 36-2-16-8, and the county assessor may appoint one first deputy and other full-time or part-time deputies and employees authorized by the county fiscal body. Ind. Code § 36-2-16-4.

But I don't think this tells the whole story. Taulbee attached to her complaint the Starke County Employee Handbook which sets forth disciplinary procedures and grievance resolution procedures. [DE 1 at 38-39.] The grievance procedure provides that after a written grievance is presented, the Commissioners "will hear and render a decision upon the grievance at their next regularly scheduled meeting." [*Id.* at 39.] Moreover, all parties must be given written notice of the issues to be addressed and an opportunity to be heard. [*Id.*] In other words, Starke County has chosen to provide due process protections to employees who are subject to discipline. And that process specifically involves the Commissioners.

Defendants rely upon a case from the Court of Appeals of Indiana where the court stated that "[county] [o]fficials are independently empowered to appoint and

discharge their own deputies at their discretion." *Local 1963 of UAW v. Madison Cnty.*,

999 N.E.2d 949, 957 (Ind. Ct. App. 2013). But that case is easily distinguishable from the

circumstances here. In *Local 1963*, the county entered into a Collective Bargaining

Agreement (CBA) with a local union (UAW). The newly elected assessor then chose to

reduce the number of deputies/employees in his office. *Id.* at 951. Local 1963 filed

grievances on behalf of the terminated deputies/employees, alleging breach of the

CBA, and demanded arbitration. *Id.* The court found that the County Commissioners

and its County Council lacked authority to unilaterally bind non-consenting,

independently elected officials to the CBA and by entering into the CBA, they

"exceeded their authority and encumbered the Officials' right to appoint and discharge

their deputies and employees." *Id.* at 952. There is no CBA in this case and these issues

just aren't present here.

In this case, Taulbee claims the Starke County Commissioners improperly failed

to reinstate her. Taulbee used an internal grievance procedure established by Starke

County, Indiana, by which all its deputies/employees can question a termination

decision or personnel policy. She alleges the County Commissioners failed to confront

Taulbee with Assessor Schouten's allegations, and failed to give Taulbee an opportunity

to be heard. [Compl. ¶¶ 125-27.] She also claims the hearing was unfair because the

Starke County Commissioners allowed County Attorney to lead the questioning of the

executive session, but he had played a prior role in terminating Taulbee by telling

Assessor Schouten to say the reason for terminating her was because "it's not working

out." [Compl. ¶ 38.] In other words, Taulbee asserts the County Attorney gave Schouten key words to use so it appeared that her termination was legitimate, and she believes a hearing run by that same attorney was not fair or impartial. And, ultimately, Taulbee claims the Starke County Commissioners caused her a constitutional injury when they upheld Schouten's decision to terminate.

In sum, broadly speaking, at this early stage of the case, subject to the analysis set forth below, the Commissioners are proper parties to this action.

I.      **Count I - First Amendment Claim Based on Political Association**

Count I is a First Amendment claim brought under § 1983 against all defendants. Taulbee claims that her termination was an act of retaliation for her providing political support to certain candidates. Defendants seek dismissal on the grounds that Taulbee holds a policymaking position and therefore her First Amendment claims for violation of her right to free speech, association, and support of political candidates must necessarily fail.

In general, "public employees may not be made to suffer adverse job actions because of their political beliefs." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004) (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 79 (1990); *Elrod v. Burns*, 427 U.S. 347 (1976)). It is therefore "well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment[.]" *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). But there is an exception for employees in so-called "policymaking" positions. *Id.* The "government's interest in securing

employees who will loyally implement its policies can be adequately served by choosing or dismissing certain high-level employees on the basis of their political views." *Rutan*, 497 U.S. at 74. The job must entail a "heightened need for trust and confidence that its subordinates are guided by the same political compass and will exercise their discretion in a manner consistent with their shared political agenda." *Bonds v. Milwaukee Cnty.*, 207 F.3d 969, 977 (7th Cir. 2000).

In the Seventh Circuit, "the inquiry centers on whether the governmental position authorizes, either directly or indirectly, meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Kelley v. Davis*, No. 1:11-cv-331-SEB-DML, 2013 WL 5486742, at *4 (S.D. Ind. Sept. 30, 2013) (citing *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996)). In answering that question, courts look to the inherent powers of the position (rather than the actual functions performed by the person currently in the position) as well as the degree of discretion and responsibility exercised in the position. *Id.* Although a job description[1] provides guidance to determine inherent powers with a position, if the powers are set by statute or ordinance, those reign. *Davis v. Ockomon*, 668 F.3d 473, 47-78 (7th Cir. 2012).

So let's get down to the main issue, which is whether Taulbee was a "policymaker." This was directly addressed by the court in *Kelley* which specifically found that "under Indiana law, political affiliation is an appropriate requirement for the

---

[1] Taulbee has not provided the court with a job description.

9

position of an Indiana Deputy County Assessor." 2013 WL 5486742, at *4. The *Kelley* court looked at the same statutes applicable in this case, and recognized that a deputy assessor "may perform all the official duties of the officer who appointed him." Ind. Code § 36-20-16-3. Because deputy county assessors are appointed by the county assessor, we need to examine the duties of the county assessor. According to section 36-2-15-5, the county assessor performs all functions assigned to him by statute including countywide equalization, the selection and maintenance of a countywide computer system, certification of gross assessments to the county auditor, and the discovery of omitted property. Ind. Code § 36-2-15-5. In addition, where the township assessor's office has been abolished, the county assessor is to perform the duties previously assigned to the township assessor under Title 6, Article 1.1 of the Indiana Code. *Kelley*, 2013 WL 5486742, at *5. The court concluded that "[t]he deputy county assessor plays a vital role in the implementation of the county assessor's policies" and that "party affiliation and personal loyalty to the duly elected officer are appropriate requirements for the effective performance of the office of deputy county assessor," therefore, the plaintiffs' First Amendment rights were not violated after their employment was terminated following an election. *Id.* at *5-6. And although *Kelly* was decided on summary judgment, the decision was made on the basis of Indiana law, not on the particular facts of the case.

Similarly, in *Kline*, the Seventh Circuit also held on summary judgment that a deputy auditor in Spencer County, Indiana, was subject to the policy-maker exception

and could be fired for political reasons. *Kline v. Hughes*, 131 F.3d 708 (7th Cir. 1997).

Although *Kline* involves a deputy county auditor instead of a deputy county assessor

(like this case), the statutory scheme in *Kline* is almost identical to the statutory scheme

for a deputy assessor. The Seventh Circuit found political affiliation was an

"appropriate requirement" for the job because the Indiana statutory scheme provided

that "a deputy county auditor may perform all of the official duties of the county

auditor" and the county auditor "is responsible for all the official acts of the deputy."

*Id.* at 709-10. "This arrangement makes clear that the office of deputy auditor plays a

vital role in the implementation of the county auditor's policies." *Id.* at 710.

    As noted above, the procedural posture of both *Kline* and *Kelly* were different

than in this case. They were decided on summary judgment, not on a motion to

dismiss. But they were both decided based on the state statute involved in those cases

and how it described the particular job in question. And that is why several cases have

dismissed similar actions on a motion to dismiss. *See, e.g., Upton v. Henderson,* No. 1:07-

cv-00957-SEB-TAB, 2008 WL 11502056, at *3-5 (S.D. Ind. July 16, 2008) (granting a

motion to dismiss and applying the *Kline* rationale in concluding deputy county

surveyors may be dismissed for political reasons as they are policymaker positions);

*Hanson v. Milton Twp.*, 177 F.Supp.3d 1096, 1100-02 (N.D. Ill. 2016) (adopting *Kline*

reasoning in finding a deputy assessor position is also a policymaking position under

Illinois law, and granting motion to dismiss the First Amendment retaliation claims).

    Defendants claim the policymaker exception is not applicable in this case for

three main reasons: (1) Taulbee was terminated March 8, 2019, almost two years after Schouten was chosen by the Democratic party to be the assessor; (2) Taulbee and Schouten are both affiliated with the same Democratic party; and (3) Taulbee herself only performed ministerial duties. All three of these arguments are unpersuasive.

Taulbee first contends the policymaker exception does not apply because she was terminated two years after Assessor Schouten took office. I'm at a loss to understand how the timing of when Schouten took office has anything to do with this case. Indeed, the key fact is that Taulbee alleges that she ran against a current official for a different position in the Democratic caucus in 2019 — the same year she was terminated. [Compl. ¶ 32.] Thus, the sum and substance of Taulbee's constitutional claim is that she campaigned and ran against the current Auditor. The issue of when Schouten assumed office is entirely beside the point.

Taulbee next contends the policymaker exception is inapplicable because she and Assessor Schouten both belong to the Democratic party. Taulbee says she was fired because she ran against another Democrat to fill the remainder of a term as Starke County Treasurer, and that she campaigned against and was associated with a faction campaigning against appointed officials running for re-election to the same position. [Compl. ¶¶ 31-32.] The problem is that Taulbee's argument is not supported by any case law. And indeed, the law is to the contrary:

> Preliminarily, we note that, although *Branti* addressed the problem of the termination, by a newly appointed Democratic Public Defender, of the assistants of the prior Republican Public Defender, its reasoning applies with equal force to patronage dismissals when

one faction of a party replaces another faction of the same party, especially in election districts where a primary victory within the dominant party virtually assures victory in the subsequent general election.

*Tomczak v. City of Chicago*, 765 F.2d 633, 640 (7th Cir. 1985) (citations omitted). Thus, it doesn't matter that Taulbee and Schouten are both Democrats.

Finally, Taulbee asserts that she only did ministerial jobs and didn't have meaningful input into governmental decision making. But this is not the correct test. Instead, I'm required to examine "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." *Tomczak*, 765 F.2d at 640. Taulbee believes this inquiry is premature at the dismissal stage, but it actually "presents a question of law informed solely by the job description and the powers of office." *Riley v. Blagojevich*, 425 F.3d 357, 361 (7th Cir. 2005) (quotation omitted). There is no need for me to examine the actual duties performed by Taulbee because the nature of the powers and responsibilities inherent to her position is what controls. And, as mentioned before, Indiana statutes provide the position of deputy county assessor is granted broad powers, and Taulbee may perform all the official duties of the county assessor. This statutory scheme places Taulbee in a position that carries with it the inherent ability to have "meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Americanos*, 74 F.3d at 141 (quotation omitted).

Taulbee was in a policymaking position; therefore, her termination did not violate her First Amendment rights. Because I reached this decision based upon the

inherent powers of the deputy assessor position, which is established by the applicable

state statutes, any effort to amend the complaint would be futile. Dismissal is

warranted on Count I with prejudice.

## II.     Count II - Violation of First Amendment Right to Free Speech and Matters of Public Concern

Count II alleges that Schouten and the three County Commissioners violated

Taulbee's First Amendment rights to free speech when they terminated her based on

her speaking out on a matter of public concern. This claim fails for the same reason that

Count I fails; Taulbee held a policymaker position, and as such, she is not afforded the

same First Amendment protection as ordinary public employees.

But there is another reason Count II must be dismissed. The claim is foreclosed

by *Garcetti*, which holds that "when public employees make statements pursuant to

their official duties, the employees are not speaking as citizens for First Amendment

purposes, and the Constitution does not insulate their communications from employer

discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Public employees are treated a differently than people who work for private

companies. To prove retaliation in violation of the First Amendment, they first have to

show that their speech is constitutionally protected. *Swetlik v. Crawford*, 738 F.3d 818,

825 (7th Cir. 2013). The First Amendment does offer some protection to public

employees, but "it does not empower them to constitutionalize the employee

grievance." *Garcetti*, 547 U.S. at 420 (quotation omitted). A public employee's speech is

only protected if:

> (1) [s]he spoke as a private citizen rather than in [her] capacity as a
> public employee; (2) [s]he spoke on a matter of public concern; and
> (3) [her] interest in expressing the speech is not outweighed by the
> state's interests as an employer in promoting effective and efficient
> public service.

*Lett v. City of Chicago*, 946 F.3d 398, 400 (7th Cir. 2020) (quotation marks and citation

omitted).  Under *Garcetti*, the pivotal question is whether the employee makes the

relevant speech "pursuant to their official duties."  547 U.S. at 421.

     Here, Taulbee alleges she was terminated after she informed the Starke County

Commissioners that the auditor's office improperly created an addendum to a sales

document for the real property conveyance between Bailey and Minix, and when she

complained about being directed to complete a sales disclosure form for Houston when

he failed to provide a completed form of sales disclosure to the Assessor's office.

[Compl. ¶¶ 70-75.]  The complaint alleges that "[a]s a citizen of Starke County and

owner of real property located within Starke County, Plaintiff believed this matter is

vital to the public's interest and is a matter of public concern." [*Id.* ¶ 70.]

     These facts are similar to two recent Seventh Circuit cases.  *Davis v. Chicago*, 889

F.3d 842, 845 (7th Cir. 2018), involved an employee of Chicago's Independent Police

Review Authority who alleged his supervisor fired him because he refused to change

his findings in a number of investigations into police misconduct.  The Seventh Circuit

affirmed dismissal of the protected speech claim finding "[b]ecause Davis's refusal was

pursuant to his job duties, he spoke as a public employee rather than a private citizen.

His speech, therefore, falls outside the First Amendment's scope."  *Id.* at 845.  It also

recognized the truism that "the fact that an employee may have good reasons to refuse an order, does not necessarily mean the employee has a cause of action *under the First Amendment* when he contravenes that order." *Id.* at 845-46 (emphasis in original) (quotation omitted). This same rationale was endorsed again by the Seventh Circuit in *Lett*, where an investigator in the Civilian Office of Police Accountability alleged retaliation for his refusal to amend investigative reports. *Lett v. City of Chicago*, 946 F.3d at 400. The Court affirmed the dismissal of the complaint and recognized that "[j]ust as in *Davis*, Lett would have had neither occasion nor reason to refuse the request if not for his job." *Id.* at 401.

Similarly, Taulbee was required to review whether there were sales disclosure forms signed by each party to a real estate sale as part of her job. Her refusal to complete the sales disclosure forms for Houston or to approve of the conveyance of property owned by Bailey to Minix was speech made "pursuant to [her] official duties." *Garcetti*, 547 U.S. at 421. Taulbee would have had no occasion to refuse the allegedly illegal request, or report it to the Commissioners, were it not for her position as the deputy county assessor. As such, her speech is not protected by the First Amendment and this claim should also be dismissed with prejudice.

### III. Count III - Retaliation/Discrimination of the Indiana False Claims and Whistleblower Protection Act

The claims in Count III are alleged only against Starke County, sued by and through its Commissioners. [Compl. ¶ 95.] In particular, Taulbee alleges that the Commissioners violated the Indiana Whistleblower Protections Act when they

16

approved her termination. *See* I.C. § 5-11-5.5-1 *et. seq.* I don't need to delve into the particulars of that Act because Starke County's only argument for dismissal is that it is an improper party. [DE 13 at 4-5.] But earlier in this opinion, I found to the contrary. As this is the only argument for dismissal, Starke County's motion to dismiss Count III is denied.

## IV. Count IV - Violation of Plaintiff's Civil Rights Related to Defendants' Public Policy Violation of Indiana Law

This Count is confusing. On the one hand, the heading to Count IV relies on some amorphous violation of Indiana's "public policy." But the body of the complaint contained in Count IV addresses alleged violations of the Indiana Constitution, in particular equal protection and due process. The first allegation is that by discharging Taulbee without an opportunity for an impartial hearing before the Commissioners, Defendants violated Taulbee's right to due process protected by the Indiana Constitution. [Compl. ¶ 109.] The complaint then claims that Taulbee was denied to her rights to "equal protection" under the Indiana Constitution. [*Id.* ¶ 110.]

The problem with Count IV is that "[t]here is no explicit language in the Indiana Constitution providing any specific remedy for violations of constitutional rights" and the courts have not recognized an implied constitutional remedy either. *Cantrell v. Morris*, 849 N.E.2d 488, 499 (Ind. 2006); *Smith v. Indiana Dep't of Correction*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007). In other words, in Indiana, there is no state law analog to Section 1983. Indiana state courts have deferred to state legislature determination instead, only awarding remedies for constitutional violations based on state statutes

and tort law.  *Cantrell*, 849 N.E.2d at 505-06.  The only thing the complaint alleges is that Taulbee is bringing her claims under Indiana Code § 36-2-15 *et seq.*  But this is the statute that sets forth the duties of the county assessor.  That statute has nothing to do with providing a private right of action for violations of the Indiana Constitution.

In response, Taulbee doesn't address the Defendants' argument.  Instead, she discusses her tort claims notice and how the Starke County Auditor committed a Class A infraction in creating an addendum to transfer real property from Bailey to Minix which was not actually sold and in directing Taulbee to complete Houston's incomplete form of sales disclosure.  [DE 17 at 16.]  Then, Taulbee says "Defendants' 'beef' seems to primarily be with citation within Plaintiff's Complaint to I.C. § 36-2-25[2] *et seq.* concerning county assessors." [*Id.*]  Taulbee next claims she "should be allowed to amend her Complaint to correct this typographical error and repeat the allegations set forth within her Tort Claims Notice."  [*Id.* at 17.]  Frankly, I'm not sure what any of that means.

To the extent Taulbee asks to file an amended complaint in her memorandum in response to the motion to dismiss, this is procedurally improper.  Taulbee has failed to file a separate motion to amend her complaint as required by N.D. Local Rule 7-1.  As such, the request for leave to file an amended complaint made in her response to the pending motion to dismiss is denied.  However, I do recognize that the Seventh Circuit

_____

[2] This must be a typographical error in Taulbee's memorandum, as the statute cited in the complaint is Indiana Code § 36-2-15, not 36-2-25 (which does not even exist).

18

has instructed when a plaintiff's complaint is dismissed under Rule 12(b)(6) the general rule is to give at least one opportunity to amend the complaint before the action is dismissed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). Count IV will be dismissed, and while I have substantial doubts whether any claim is viable under the Indiana Constitution in these circumstances, the dismissal will be without prejudice. Taulbee is granted leave to re-file Count IV and cure the pleading deficiencies, if she can, as discussed in this opinion.

## V.     Count V – Federal Claims for an Equal Protection and Due Process

Count V alleges under Section 1983 a violation of both due process and equal protection. It is being brought against all defendants. It is unclear why the due process claim and equal protection claim are alleged in the same count of the complaint. As discussed below, they are distinct claims and should be alleged as such.

I'll start with the equal protection claim. Taulbee alleges that Defendants violated her right to equal protection when they terminated her from the Deputy Assessor position. "To establish a prima facie case of discrimination under the equal protection clause, plaintiff is required to show that [s]he is a member of a protected class, that [s]he is otherwise similarly situated to members of the unprotected class, and that [s]he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quotation omitted).

Here, Taulbee has not alleged that she is a member of a protected class or how she was treated differently from members of an unprotected class. In her response

memorandum, Taulbee states she wishes to amend Count V of the complaint to add more detail. [DE 17 at 17.] As mentioned before, this is not the proper way to advance a motion to amend. While I'm not sure Taulbee will be able to cure her pleading deficiencies, this is her first request to amend the complaint and I do think she deserves the opportunity to try to fix the problems with it. I will grant the motion to dismiss as to the equal protection claims in Count V and they will be dismissed without prejudice, granting leave for Taulbee to re-file and cure the pleading deficiencies as discussed in this opinion.

Count V also alleges a federal due process violation. Defendants' argue that Count V fails because Taulbee has not pled that she was deprived of a protected property interest. [DE 18 at 11-12.] To demonstrate a due process violation, Taulbee has to establish a cognizable property interest, a deprivation of that interest, and a denial of due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). Defendants claim Taulbee has not established a property interest in her job because she was an at-will employee. However, "[a] protected property interest in employment can arise from a statute, regulation, municipal ordinance, or an express or implied contract . . . ." *Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010).

At this early stage of the proceedings, on a motion to dismiss, Taulbee has sufficiently alleged that there was some type of contract — the Starke County Employee Handbook established a progressive disciplinary procedure and grievance resolution procedure, and she claims there was an understanding that the rules allowed the Starke

County Commissioners to reinstate deputies. [Compl. ¶¶ 30, 111-16, 125-29.] This is sufficient to get the due process claim past a motion to dismiss. So the section 1983 due process claim survives dismissal. However, as noted above, if Taulbee chooses to file an amended complaint, if for no other reason than the sake of clarity, the due process and equal protection claims should be segregated into separate counts.

## Conclusion

For the reasons stated above, Defendants' Motion to Dismiss [DE 12] is **DENIED IN PART AND GRANTED IN PART**. The Motion is **GRANTED** with respect to Counts I and II, which are **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** with respect to Count III, which remains pending. The Motion is **GRANTED WITHOUT PREJUDICE** to Count IV and the portion of Count V alleging equal protection violations. The due process claim in Count V remains pending. Taulbee is granted leave for Taulbee to re-file and cure the pleading deficiencies within 30 days from the date of this Order.

SO ORDERED.

ENTERED: April 2, 2020.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT